UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| RONALD WAYNE SARBER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | CIV. NO. 2:16-CV-154-MCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with consent of the parties and by order of reference [Doc. 14] for disposition and entry of a final judgment. Plaintiff's application for Disability Insurance Benefits and/or Supplemental Security Income under the Social Security Act was administratively denied following a hearing before an Administrative Law Judge ("ALJ"). This is an action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Plaintiff and Defendant each filed Motions for Summary Judgment [Docs. 15, 19].

**I.    APPLICABLE LAW – STANDARD OF REVIEW**

The scope of review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is defined as evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury.

*Lemaster v. Sec'y of Health & Humans Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). However, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

A claimant must be under a "disability" as defined by the Social Security Act to be eligible for benefits. Within the statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent the claimant from (1) performing his past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation process applies in disability determinations. 20 C.F.R. §§ 404.1520 & 416.920. A dispositive finding at any step ends a review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience,

and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

"The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)," while the Commissioner has the burden to establish the claimant's ability to work under step five. <u>Moon v. Sullivan</u>, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II.   RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A.   Procedural History

Plaintiff, Ronald Wayne Sarber ("Sarber"), asserts he is disabled due to a back disorder and social anxiety disorder (Tr. 15) (reference to "Tr" and the page denote the administrative record). He was a person closely approaching advanced age under the regulations at the time of his March 2013 application, 20 C.F.R. §§ 404.1563 and 416.963, in which he alleged a disability onset date of January 1, 2012 (Tr. 13). He was a person of advanced age at the time of the December 3, 2014, Decision.

Sarber's insured status expired on June 30, 2016. (Tr. 15). He must establish disability on or before that date to be entitled to benefits. Sarber's claims were initially denied on September 26, 2013, and again upon reconsideration on December 23, 2013. (Tr. 118, 123). An ALJ conducted a hearing on November 12, 2014; Plaintiff and a Vocational Expert ("VE") testified. (Tr. 30-50).

The ALJ conducted the five-step analysis in evaluating the claims. The ALJ's Decision (Tr. 13) made several findings, including that Sarber was not disabled:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016;

2. The claimant has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*);

3. The claimant has the following severe impairments: a back disorder and social anxiety disorder (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 406.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he can perform occasional postural activity (climbing, stooping, kneeling, crouching, and crawling) and occasional overhead reaching bilaterally. The claimant should avoid concentrated exposure to vibrations and hazards, and he is limited to performing simple, unskilled work. In addition, the claimant should work with things rather than people, having only occasional contact with coworkers, supervisors, or the public;

6. The claimant is unable to perform any past relevant work (20 CFR 401.1565 and 416.965);

7. The claimant was born on January 30, 1958, and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2012, though the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-24).[1]

The Appeals Council denied Plaintiff's review request and he appealed to this Court.

**B.     Evidence in the Record**

The Decision includes a review and analysis of the underlying medical evidence. (Tr. 15-23). Shipley's motion summarizes the record evidence [Doc. 16, pp. 2-6] and the Commissioner's motion does likewise [Doc. 20, pp. 1-8]. The transcript contains records from treating providers Appalachian Orthopaedic Associates and William Clever, F.N.P., and Dr. David Merriman of Appalachian Family Care. (Tr. 243-343, 374-88). Reference to the evidence herein, both medical and otherwise, is only set forth as necessary.

**III.    ANALYSIS**

On appeal, the primary issue for review is whether the Commissioner's decision is supported by substantial evidence. Plaintiff argues the ALJ failed to properly weigh the examining or consultative source's medical opinion, failed to properly evaluate his credibility, and failed to properly evaluate Plaintiff's mental limitations for purposes of the VE testimony.

**A.     Medical Source Opinions**

Plaintiff claims the ALJ erred by declining to give full weight to the opinion of the consulting medical examiner, Dr. Marianne Filka. He believes the ALJ improperly rejected the lifting and carrying limitations recommended by Dr. Filka. Plaintiff urges Dr. Filka's more limited lifting and carrying limitations would impact his ability to perform a full range of medium work and that such limitations should have been assessed by the VE. Plaintiff also argues that the ALJ adopted postural restrictions that were not based upon the medical opinion evidence.

---

[1] The ALJ included a discussion following many of the findings. Such discussion is not repeated here unless necessary.

An ALJ must adhere to certain standards in assessing medical evidence in a disability benefits claim. These standards are set forth in 20 C.F.R. § 404.1527(c) and 416.927(c) and include factors to consider in deciding weight given to medical opinions. These factors include the nature of the examining relationship, whether the provider is a treating physician[2], the opinion's supportability, the opinion's consistency with the record as a whole, any specialization of the physician and other factors brought to the Commissioner's attention that tend to support or contradict the opinion. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544; 20 C.F.R. §§ 404.1527(c) & 416.927(c).

The transcript contains records of Sarber's orthopedic care in 2003 and 2004 for left shoulder and foot complaints. (Tr. 243-45). Imaging from this period shows degenerative changes in Sarber's cervical spine. (*Id.*). These few older records contain no restrictions on activities and work capacity. (*Id.*). The bulk of the records in the transcript arise from care provided by Sarber's family physician, Dr. David Merrifield, and William Clever, F.N.P., from 2008 to 2014. The records identify Sarber's physical complaints and conditions, but discussion is not detailed.

The ALJ memorialized the content of the treatment records, particularly relative to the resulting symptoms, impact on Sarber and treatment rendered, in the Decision. The ALJ found Sarber has a severe back disorder. (Tr. 15). The ALJ noted Sarber made complaints about cervicalgia, joint pain and low back pain over time but that these issues were intermittent and were controlled with over-the-counter medications. (Tr. 19). The ALJ recorded that Sarber did not "endorse any musculoskeletal complaints or limitations" at appointments from June 2012 to April 2013, and an exam in April 2013 relative to complaints of back pain did not reveal physical

---

[2] 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) outline the method of analysis for treating opinions and the weight to be afforded. However, this case does not involve a treating source opinion, thus making those requirements inapplicable.

abnormalities or restrictions. The ALJ further noted Sarber reported intermittent sciatica symptoms in October 2013 "for which he was advised to utilize non-pharmaceutical interventions." (Tr. 19). Finally, the ALJ wrote that from January to October 2014, Sarber "did not mention any ongoing musculoskeletal pain, and his physical exams failed to reveal evidence of a decreased range of motion, muscle spasms, tenderness, gait abnormalities, strength deficiencies, or sensation insufficiencies." (Tr. 20).

Although the ALJ found severe disorders existed, the ALJ did not find the conditions reached a disabling level for purposes of social security. First, the treatment records did not reflect that any treating source limited the claimant's activities in any way or contain opinions that he is disabled due to his claimed impairments. (Tr. 22-23). Rather, the ALJ believed the conservative nature of Plaintiff's medical care pointed to an absence of disability. It was important to the Decision that clinical and diagnostic evidence did not show significant abnormalities or limitations. (Tr. 22). Likewise, Plaintiff "only required occasional evaluation and treatment of any alleged impairment," and his office visits were typically "no more frequent than every three months." The only treatments recommended were the use of over the counter medications and non-pharmaceutical steps (Tr. 19), and he "did not necessitate emergent care, hospitalization, specialist intervention, [or] pain management services . . .." (Tr. 23).

The Court agrees that the conservative treatment history and absence of treating physician restrictions are striking. As the Commissioner's brief notes [Doc. 20, p. 10], a conservative approach to treatment such as the one articulated here "suggests the absence of a disabling condition." *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013). It is also proper for an ALJ to place weight on the fact that a claimant submitted no information indicating any functional limitations, "because 'a lack of physical restrictions constitutes substantial evidence for

7

a finding of non-disability.'" *Longworth v. Comm'r, Soc. Sec. Admin.,* 402 F.3d 591, 596 (6th Cir. 2005) (quoting *Maher v. Sec'y of Health & Human Servs.,* 898 F.2d 1106, 1109 (6th Cir. 1989)). The ALJ appropriately did so here, but neither were completely determinative as the ALJ gave weight to the consulting opinions in adopting physical limitations for Plaintiff.[3]

Dr. Filka, the consulting examiner, prepared an August 15, 2013, report of her examination. (Tr. 350). The report reflects as follows relative to the physical status and conditions at issue:

> EXTREMITIES: Joint appearance shows mild osteoarthritic changes in the fine finger joints. The rest of the joints appeared to be normal. Range of motion is full throughout including both shoulders. Strength is 5/5 and symmetric distally and proximally in both upper and lower extremities including handgrip strength and thumb-index pinch. This also includes shoulder, biceps, triceps and rotation, internal and external. He is right-handed. Fine and gross manipulative skills appeared to be normal. Muscle mass appears to be normal with no atrophy or hypertrophy throughout. His sensation is normal to light touch throughout. There is tenderness into the right MTPs and right MCPs to compression. The rest of his joints are nontender. I do not see any red, hot, swelled joints or joint effusion. There is trigger point tenderness in the left forearm. The rest of the soft tissues in extremities are nontender. His gait is with no assistive device and is normal. He is able to briefly toe stand and do a squat and so a one leg stand, right and left. Posture change [sic] are done with no evidence of difficulty climbing up and down off the exam table, going from sitting to lying, lying to sitting, sitting to standing and bending.
>
> SPINE: Shows no deformity. There is no cervical or thoracic tenderness. In the low back there is tenderness over the SI joints. He has negative bilateral sacral notch tenderness and negative bilateral straight leg raising. Range of motion of cervical and lumbar spine is normal.
>
> Neurologic: Alert and oriented x4. Cranial nerves II through IX are intact. Motor strength, range of motion, sensation, gait as above. Speech is clear. DTRs 2 + and symmetric throughout. Toes are downgoing. There is no clonus.

(Tr. 355). It is apparent that Dr. Filka did not identify a significant physical/medical problem in

---

[3] The Court has reviewed the treatment records and confirmed the ALJ's assertion that they are devoid of restrictions on lifting or postural activity. The Court also notes that that no treating providers opined that Sarber is disabled as a result of his claimed impairments given the lack of restrictions. (Tr. 23). This is unsurprising given the absence of restrictions.

her examination and personal observations of Plaintiff and, as noted in the Decision, her clinical findings are consistent with "the overall objective evidence of record." (Tr. 22).

Drs. James Millis and Karla Montague-Brown also reviewed the evidence regarding the claimed physical impairments, including Dr. Filka's report, and issued opinions. (Tr. 58-59, 90-92). Both found Dr. Filka's restrictions as to lifting and carrying "slightly overly restrictive" and instead opined that Sarber can occasionally lift or carry 50 pounds, frequently lift and carry 25 pounds, stand and walk or sit for 6 hours of an 8-hour workday, occasionally climb ramps, stairs, ladders, ropes and scaffolds, and frequently stoop and crouch. (*Id.*). Each also wrote that Sarber was limited in overhead reaching, a restriction Dr. Filka did not apply. (*Id.*). These restrictions are the same ones applied by the ALJ.[4] Two consistent opinions of reviewing physicians as to limitations and restrictions is not insignificant and supports the ALJ's decision not to apply Dr. Filka's opinion as to Sarber's restrictions.

Lastly, a medium RFC with the specific lifting and carrying restrictions identified by Dr. Filka would not alter the finding of non-disabled. This is apparent from the record and the VE's answers to hypothetical questions posed by the ALJ which assumed light and sedentary work classifications for Plaintiff under 20 C.F.R. § 1567(a) & (b) and 416.967(a) & (b). Both categories use far greater restrictions for lifting and carrying than Dr. Filka opined. A person who can perform medium work can perform light work and a person who can perform light work can perform sedentary work. *Id.* Even if Dr. Filka's restrictions were used, the record contains evidence to demonstrate that Plaintiff is capable of performing work in these two more restrictive job classifications for which the VE testified that jobs exist in the state and national economies.

---

[4] The Decision does not cite to these opinions although both were exhibits to the hearing record. The ALJ has indicated reliance on the full record, however. The Court does not find the absence of specific reference to these opinions to be error, but if it was, such error is harmless.

The ALJ determined that the "incidence of these jobs represents a significant number…." (Tr. 24).[5] In short, the Commissioner demonstrated that significant numbers of other jobs exist in the national economy which the claimant can perform as required by step five of the sequential analysis, 20 C.F.R. § 404.1520(a)(4) & 416.920(a)(4).

The Court finds substantial evidence exists to support the ALJ's determination with regard to the weight accorded to Dr. Filka's opinion.

**B.     Credibility Determination**

Sarber next asserts the ALJ failed to properly weigh his credibility. The Sixth Circuit has long held that a claimant's credibility may be considered. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). "An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). An ALJ's "findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The assessment of credibility must be supported by substantial evidence. *Id.*

The ALJ addressed credibility at several points in the Decision. He found that while Plaintiff's medically determinable physical impairments could reasonably be expected to cause the alleged symptoms, Sarber's statements concerning the intensity, persistence and limiting effects of his claimed symptoms were not entirely credible. (Tr. 21).

Sarber testified he can only stand and sit for about 30 minutes at a time and it is painful to lie down, but as of the time of the testimony, he was not taking any pain medication and

---

[5] Plaintiff does not assert error as to this determination.

commented he took pain medication "back in the 90s." (Tr. 36-7). He also did not seek emergent or specialist care and the frequency of visits to his family practice is conservative. In fact, Sarber's medical records only identify "intermittent complaints, evaluation, or treatment for any spinal pain or disorder." (*Id*.). Reports of medical imaging of Sarber's back dated almost nine (9) years prior to claimed date of onset of disability and indicated some mild degenerative changes while more recent imaging did not show abnormalities. (Tr. 21). The ALJ noted this information in the Decision, and the summary is confirmed by the records. (Tr. 243-393).

Sarber's admitted physical activities also belie the claimed scope of symptoms. He completed a Function Report on June 6, 2013, in which he discussed his various activities. (Tr. 210-17). At that time, he lived alone in a house, had no problems conducting his own personal/hygiene care, prepared his own meals daily and did household chores, including spending two (2) hours to mow each week, cleaning, laundry, repairs and ironing. (Tr. 211-12). He could drive and shopped two or three times a week for two hours. (Tr. 213). He was able to pay bills, make change and handle his accounts. (*Id*.). He spent time reading "about every day." In response to a question about places he went and regularly visited, Plaintiff wrote that he mainly visits his parents. (Tr. 214). (Notably, however, he had a DUI after being out with "the boys" and lost his driver's license in 2012. He testified at the hearing that he drives, but then claimed a friend drives him when challenged by the ALJ about his lack of a license. (Tr. 43, 55, 362)). Sarber wrote that he could walk a quarter mile before needing to rest before continuing and could pay attention for a long time if he did not let his mind wander. (Tr. 215). This function report was cited by the ALJ, along with activities reported to Arthur Stair and Dr. Charlton Stanley (the psychological examiner and supervising psychologist) in August 2013, (Tr. 360), and the record as a whole, in reaching

11

the determination that Plaintiff's statements about his symptoms are not entirely credible.[6]

The Court finds the record contains ample evidence of inconsistencies in activities reported as compared to symptoms and resulting physical limitations alleged. The Court has previously addressed the medical evidence hereinabove and will not reiterate such information here. Rather, the Court adopts its discussion above and finds that ample medical evidence exists to demonstrate the intensity, persistence and limiting effects of Plaintiff's symptoms are not at the severe level he claims. Further, the objective medical evidence does not confirm the alleged severity of pain caused or which would be reasonably expected as Plaintiff has argued and for which he cites *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Plaintiff, as a part of his assertion of error in the ALJ's credibility determination, also argues that the ALJ failed to compare his allegations with medium level work. Sarber effectively claims that regardless of the content of his medical records (including the absence of claims to his family practice providers of significant pain and physical limitations and consistently conservative treatment of his conditions), the ALJ should have accepted his claimed physical symptoms for purposes of 20 C.F.R. §§ 404.1567 and 416.967 job classifications to find that he cannot perform medium work and "at most" can only perform light work. Plaintiff's position is flawed. An ALJ is, as noted above, not required to accept a claimant's subjective complaints.

Notably, Plaintiff appears to concede that he can perform light work. As previously

---

[6] In a second Function Report completed barely five (5) months later in November 2013 and after a denial of benefits in September 2013 that was based, in part, upon the various activities he admitted doing, Sarber's answers changed noticeably. He claimed people had been hired to do his household chores, he only shopped for food twice a month for two hours, and did not write that he visits his parents. (Tr. 229-232). He also claimed he could only walk 100 feet before needing to rest and he could only pay attention for two to three minutes. The marked change in reported activities is unexplained by the medical records. He reported no new physical complaints to his family practice provider in July 2013, (Tr. 375), or October 2013 (Tr. 377).

discussed, the VE testified there are both light and sedentary jobs available for a hypothetical person with Plaintiff's physical attributes and limitations, thus satisfying step five of the analysis for purposes of his medical conditions.

The Court does not find consistency in the overall record, particularly in the testimony, medical records, and Sarber's own written statements about his activities, with Plaintiff's subjective allegations of symptoms and limitations that would preclude performance of medium work. The Court finds the opposite; there are clear and glaring inconsistencies evident to the Court and which were evident to the ALJ as shown by the Decision. The person Sarber claims to be is not the person documented in the records.

Therefore, the Court finds no error in treatment of the subjective allegations and credibility.[7] The Court gives deference to the ALJ's determination of credibility and finds that substantial evidence exists to support same.

## C.  Evaluation of Mental Limitations for VE Hypothetical Questions

Sarber asserts that the RFC assessment and hypotheticals posed to the VE failed to accurately portray his mental limitations, and therefore, the ALJ's conclusion as to his ability to work was not supported by substantial evidence.[8]

In cases where the Commissioner relies on the testimony of a VE to demonstrate the existence of a substantial number of jobs that the claimant can perform (other than past work), the

---

[7] Furthermore, the determination of credibility is sound given the content of the record and the Court's ability to consider any evidence in the record regardless of whether it has been cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir.2001). The Court notes that Sarber saw his family practice provider on March 22, 2012, and the visit record reflects that he was "not working at [that] time but [was] actively seeking employment." (Tr. 296). This office visit occurred almost four (4) months after the alleged onset of disability on January 1, 2012. The problem with this seems obvious.

[8]  Sarber relies upon a published case from the Fourth Circuit and an unpublished Western District of Virginia case to support his position. These cases are neither controlling nor persuasive.

VE's testimony is to be given in response to a hypothetical question that accurately describes the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 513, 516. (6th Cir. 2010). Further, an improper hypothetical question cannot serve as substantial evidence. *Id*. However, only the limitations the ALJ accepted as credible shall be included in hypotheticals. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, the ALJ determined with regard to the RFC that Sarber "is limited to performing simple, unskilled work. In addition, the claimant should work with things rather than people, having only occasional contact with coworkers, supervisors, or the public." (Tr. 18). Sarber believes the ALJ erred by omitting the limitation the ALJ identified before establishing the medium RFC. More specifically, Sarber believes the ALJ's hypothetical should have referenced the ALJ's determination that Sarber's mental impairment poses a moderate limitation in his ability to maintain concentration, persistence and pace. (Tr. 18).

The primary Sixth Circuit case addressing content of hypothetical questions presented to a VE with regard to mental limitations is *Ealy*. But, as discussed below, *Ealy* is also factually distinguishable. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014) provides more pointed and relevant authority here.

In *Smith-Johnson*, the ALJ determined that the claimant could "'perform simple, routine, repetitive tasks, but must avoid contact with the general public'" and then included these findings in the hypothetical to the VE. *Id.* at 436. The *Smith-Johnson* claimant relied upon *Ealy* to claim error because the ALJ's hypothetical omitted four restrictions for the claimant that were identified by the mental-health professionals upon whom the ALJ relied. *Id.* Specifically, the mental health providers opined that the claimant (1) was moderately limited in her ability to maintain attention and concentration for extended periods, (2) was moderately limited in her ability to respond to changes at work, (3) had "weak" attention, concentration and memory, and (4) needed a low stress environment. *Id.*

The Sixth Circuit rejected reliance upon *Ealy* and explained that *Smith-Johnson* was distinguishable. *Id*. The Court clarified that the doctor in *Ealy* limited the claimant in a precise manner, specifically to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." *Id.* The Court in *Smith-Johnson* further explained:

> In that RFC assessment [in *Ealy*] . . . the ALJ included only a limitation to "simple repetitive tasks and instructions in nonpublic work settings." [citation omitted]. That RFC finding was included in the hypothetical to the VE. [citation omitted]. This court held that the RFC assessment and the hypothetical to the VE did not adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions. [citation omitted].

*Smith-Johnson*, 579 F. App'x at 437 (discussing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 513, 516 (6th Cir. 2010)). The Court then explained, at length, the differences between *Smith-Johnson* and *Ealy*. The Court focused on the absence of "concrete functional limits" upon the claimant's ability "to maintain attention, concentration or pace when performing simple, repetitive or routine tasks" in *Smith-Johnson*. *Id.* The Court held that a limitation to simple, routine and repetitive tasks adequately conveyed the claimant's moderately-limited ability to maintain attention and concentration for extended periods. *Smith-Johnson*, 579 F. App'x at 428. In other words, the limitation to simple tasks adequately portrays the claimant's ability and restrictions.

The Court went on to make similar analyses as to the other limits noted for the claimant, including determining that it was unnecessary to specify the need for a low stress environment because limiting the claimant to simple, routine and repetitive tasks and specifying avoidance of the general public functionally limited the claimant to work in situations in which she performs well psychologically. *Id*. at 439.

The present case presents a similar scenario. The supervising psychologist, Dr. Charlton Stanley, wrote about Sarber relative to personal, social and vocational adjustments:

> The claimant's ability to understand simple information or directions with the capacity to put it to full use in a vocational setting is not impaired. The claimant's ability to comprehend and implement multistep complex instructions is not impaired. The claimant's ability to maintain persistence and concentration on tasks

15

for a full work and workweek is mildly impaired due to social anxiety disorder and mild depressive features. The claimant's social relationships are at least moderately impaired as he reports withdrawal from others due to social anxiety disorder and mild depressed effect.

(Tr. 364).

Dr. Stanley did not issue specific work restrictions for Sarber in contrast to *Ealy* and his limitations are far more abridged than in *Smith-Johnson*. Based upon Dr. Stanley's report, the ALJ found Sarber had a moderate limitation in ability to maintain concentration, persistence and pace. In the absence of the specific limitations/restrictions of the type applied in *Ealy* and in accordance with the approach approved in *Smith-Johnson*, this Court finds that the ALJ's hypothetical limiting Sarber to performing simple, unskilled work, working with things rather than people, and having only occasional contact with others is an adequate, if not generous, portrayal of Sarber's limitations. The limitation to simple, unskilled work adequately signifies deficits in concentration, persistence and pace. The limitation to occasional contact with various categories of people adequately reflects Sarber's limitations in social functions.

The Court finds no error. The hypothetical question posed to the VE adequately incorporated Sarber's mental limitations. The decision of the ALJ in relying on the testimony of the VE was supported by substantial evidence.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion for judgment on the pleadings [Doc. 15] is DENIED and the Commissioner's motion for summary judgment [Doc. 19] is GRANTED for the reasons stated herein.

SO ORDERED:

s/ Clifton L. Corker
UNITED STATES MAGISTRATE JUDGE